The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et. al.,<br><br>                  Defendants. | No. C19-2043-TSZ<br><br>DECLARATION OF NATHALIE ASHER |

COMES NOW Nathalie Asher, being duly sworn, does hereby swear and affirm:

1. I, Nathalie Asher, am currently the Field Office Director ("FOD") for Seattle, Enforcement and Removal Operations ("ERO") of Immigration and Customs Enforcement ("ICE") overseeing Alaska, Washington and Oregon. This jurisdiction is referred to by ICE as the Seattle Area of Responsibility ("AOR"). I have held this position since August 2019. Prior to that I was the Executive Associate Director for ERO and held that position from August 2018 to August 2019. From April to August 2018, I was the Deputy Executive Associate Director for ERO. From November 2016 to April 2018, I was the Assistant Director of ERO. From October 2010 to November 2016, I was the FOD for the Seattle AOR. From January 2007 to October 2010, I was an Assistant Field Office Director ("AFOD") for the Seattle AOR. From 2005 to 2007, I was a Supervisory Detention and Deportation Officer ("SDDO") assigned to the Seattle ERO office.

2. I make this declaration in my official capacity in support of the Government's Opposition to Plaintiff's Motion for a Preliminary Injunction.

3. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business including

DECLARATION OF NATHALIE ASHER- 1
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

information gathered from a review of ICE records and information systems, and information provided to me by other ICE employees in the course of my official duties.

4. ICE has issued several policy statements to guide immigration officers who may conduct courthouse arrests, the most relevant being ICE Policy Memorandum 10076.1, Memorandum on Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (June 17, 2011), ICE Guidance Memorandum Enforcement Actions at or Near Courthouses (March 19, 2014), and ICE Directive 11072.1, Civil Immigration Enforcement Actions Inside Courthouses (January 10, 2018). All above mentioned policy statements only apply to ICE agents and officers and not to Customs and Border Patrol ("CBP") agents or officers.

5. In addition to the policy statements, ICE informed the public about its guidance to its officers regarding immigration enforcement inside courthouses in a FAQ Memorandum available on the ice.gov website. This document informs the public that ICE will not make civil immigration arrests inside courthouses indiscriminately, and that arrests at courthouses are the result of targeted enforcement actions against specific individuals.

6. The FAQ also addresses the rise in numbers of courthouse arrests, explaining that in past years most individuals arrested at a courthouse would have been turned over to ICE by local authorities upon their release from a prison or jail. However, due to a decline in cooperation with ICE in the transfer of custody of individuals from secure locations such as jails or prison, and because people who enter a courthouse are typically screened for weapons, immigration enforcement actions taken inside courthouses can reduce risks to the public, targeted individuals, and ICE officers and agents. The increase in courthouse arrests has risen slightly in the past few years as cooperation with ICE from the local jails and prisons has steadily declined.

7. Apprehensions are not tracked in any ICE information systems by any reportable data element indicating whether an apprehension took place "at or near" a courthouse. However, ICE has conducted a diligent search of ICE records, including a manual review of each case specific apprehension narrative for all at large apprehensions conducted by ICE in 2017, 2018, and 2019, in an attempt to identify approximate amounts of specific immigration enforcement activity referenced in the State of Washington's Complaint, Motion for Preliminary Injunction, and supporting declarations.

8. In the State of Washington, the at large apprehension (approximate) data for 2017-2019 is found below, with an average of 3% of at large arrests being conducted "at or near" a courthouse[1]:

---

[1] These numbers generally do not include apprehensions of aliens who came directly into ICE's custody via the Criminal Alien Program ("CAP"), i.e. through identification in jail/prison, detainers and direct notification by local law enforcement to ICE before the alien is released. However, since many jails and courthouses are co-located, many direct releases via CAP would be "near" a courthouse, so those may be included in the table above

DECLARATION OF NATHALIE ASHER- 2
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

| Year | WA at large apprehensions | Cases identified "at or near" courthouses | Percentage of arrests that are "at or near" a courthouse |
|---|---|---|---|
| 2017 | 850 | 17 | 2% |
| 2018 | 793 | 25 | 3.2% |
| 2019 | 481 | 23 | 4.8% |
| Total: | 2124 | 65 | 3.1% |

9. Consistent with ICE policy, all the apprehensions conducted by ICE at or near courthouses identified above were targeted apprehensions. ICE Officers conducting these apprehensions had arrest warrants for the targeted alien.

10. Of the 65 apprehensions identified above:
    a. 24 had prior orders of removal that had previously been executed and those orders were subsequently reinstated pursuant to INA § 241(a)(5).[2]
    b. 9 had final orders of removal that had never been executed and were processed for removal from the United States.[3]
    c. 54 had criminal convictions.[4]
    d. Only three were identified as occurring inside a building housing a court.[5]
    e. 56 occurred after the alien's court hearing had concluded.[6]
    f. 20 were apprehended in vehicle stops after the alien left courthouse grounds;
    g. One of the apprehended aliens was released back to King County on a court-issued transport order on April 14, 2017 to allow for criminal prosecution.[7]

---

as arrests "at or near" courthouses even though the arrest itself was not actually at a court, but rather at a co-located jail.

[2] Almost of all these aliens had more than one prior removal, with some having up to five or six.

[3] Six of the nine aliens with final unexecuted final orders were immigration fugitives, aliens who had been ordered removed in absentia by an Immigration Judge for failing to appear for their removal proceedings. One was identified as a final order alien who habitually violated his Order of Supervision, which allowed him to remain on release while ICE attempted to obtain a travel document to allow his removal. Two were aliens who had final removal orders and had exhausted all their administrative appeals.

[4] Of the 11 aliens who did not have convictions, three were either reinstatements or aliens with final removal orders that had not been executed. Two were positively identified as visa violators. One had a prior visa denial. One had multiple prior removals but was not reinstated for legal reasons. One had two prior voluntary returns, which do not constitute removals that can be reinstated. All had pending serious criminal charges, including: Child Molestation in the First Degree, Luring a Minor/Person with a Developmental Disability, Unlawful Imprisonment-Domestic Violence, Unlawful Use of a Building for Drugs, Burglary in the First Degree, Assault in the First Degree, felony Harassment, Rape in the Second Degree, Assault in the Fourth Degree-Domestic Violence and Driving Under the Influence. One had previously been identified by ICE as associated with a gang (MS-13).

[5] An additional four were unclear as to whether the apprehension occurred inside or outside the building. Of those four, two were identified as having been apprehended after release from jail. The remaining 55 occurred outside the building.

[6] Of the remaining nine apprehensions, three were identified as occurring before the alien's court hearing; three may have occurred before the alien's hearing; two could not be determined; and one indicated the alien left without attending his hearing. Five of the nine were aliens with final orders, either reinstatements or unexecuted final orders.

[7] In its discretion, ICE will release aliens to local law enforcement for criminal prosecution where the local jurisdiction provides a court-issued transport order guaranteeing that local authorities will transport the alien to and from ICE custody; the alien will be held during trial; and the alien will be returned to ICE after the conclusion of a

DECLARATION OF NATHALIE ASHER- 3
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

11. None of the apprehended aliens had pending T-visa, U-visa or VAWA applications at the time of apprehension.

12. ICE has identified the following specific immigration enforcement activities that ICE believes may match the activity described by the State. The activity described by the State, however, contains limited information and no personal identifiers. As such, ICE cannot represent with certainty that the activities listed below are a match, but ICE believes, based on the information provided and the information known to ICE, that the following activities match the activities described by the State in their Complaint, Motion for Preliminary Injunction, and supporting declarations.

13. Multiple Declarations refer to an arrest in the front courtyard of the Thurston County Courthouse on June 20, 2019. Dkt. Nos. 9, pg. 2; 11, pg. 2; 13, pg. 2, 4; 19, pg. 2; 24 pg.3; 34, pg. 2; 42, pg. 2; 47, pg. 3. ICE believes this allegation pertains to the alien identified in the I-213 marked as Exhibit A, a citizen of El Salvador, who was previously removed from the United States two times on April 11, 2012, and March 5, 2014. While in the United States, he was convicted of: (1) Driving Under the Influence and Hit and Run Property Damage in September 2001, in Centralia; (2) Driving Under the Influence and Attempting to Elude in January 2002, in Lewis County; (3) Assault in the Fourth Degree in July 2003, in Centralia; (4) Assault in the Fourth Degree and Exhibiting/Displaying a Weapon with Intent to Intimidate in December 2006, in Lewis County; and (5) 8 U.S.C. § 1326, Illegal Reentry, on November 15, 2013, in the Western District of Washington, for which he was sentenced to seven months imprisonment (case 3:13-cr-05461-RJB). ICE placed an immigration detainer on him following his arrest in Thurston County on May 1, 2019 for Driving Under the Influence and Attempting to Elude, but the detainer was not honored by local authorities and he was released from jail without notification to ICE. ICE Officers encountered him on June 20, 2019, at the Thurston County Court complex with a warrant for his arrest. The officers determined the safest course of action was to approach the subject as he left the courthouse due to his previous arrests, including his prior conviction for eluding law enforcement and assaultive behaviors. ICE Officers knew he would be free of weapons coming from a courthouse and prior to reaching his car. When approached by officers, he aggressively resisted arrest despite repeated orders to stop resisting. Once in ICE custody, his prior order of removal was reinstated. On July 18, 2019, he was transferred to the custody of the U.S. Marshals. On September 19, 2019, he was convicted in the United States District Court for the Western District of Washington for 8 U.S.C. § 1326, Illegal Reentry (case 3:19-cr-05296-BHS). He was returned to ICE custody and removed from the United States on December 4, 2019. *See* Exhibit A.

14. The Garrido Declaration alleges that a man was arrested by immigration officers on November 6, 2019, at the Kitsap County Courthouse while appearing on charges of

---

criminal case. These requirements guarantee that ICE will not need to conduct another at large apprehension after the alien's criminal case has been completed.

DECLARATION OF NATHALIE ASHER- 4
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Driving Without a License or Insurance. Dkt. No. 22, pg. 2-3. ICE believes this allegation pertains to the alien identified in the I-213 marked as Exhibit B, a citizen of Mexico, who had two prior voluntary returns from the United States in 2004. While in the United States, he was convicted of: (1) Driving While License Suspended on August 28, 2017; and (2) Reckless Driving on February 16, 2008. ICE Officers encountered the subject on November 5, 2019, after he was booked into the Kitsap County Jail for Driving While License Suspended and Contempt of Court. ICE issued an immigration detainer based on his previous voluntary returns, and lack of records showing a subsequent legal entry, and detained him upon his release from jail on November 6, 2019.[8] He was transported to the Northwest ICE Processing Center ("NWIPC"), where he admitted to being in the United States illegally. He was placed in removal proceedings before an Immigration Judge, granted bond, and released from ICE custody. His case remains pending before the Immigration Court. *See* Exhibit B.

15. The Restrepo Declaration alleges that a man was arrested by ICE in September 2018, after going to the District Court in Mount Vernon. Dkt. No. 38, pg. 8. ICE believes this allegation pertains to the alien identified in the I-213 marked as Exhibit C, a citizen of Mexico, who entered the United States on August 15, 2015, on a B-2 visitor's visa and overstayed his period of authorized stay. While in the United States, he was convicted of: (1) Taking a Vehicle without Permission on March 16, 2017; and (2) Negligent Driving on March 21, 2017. He came to the attention of ICE Officers on May 18, 2017, while they were performing Criminal Alien Program ("CAP") duties for recent bookings in the Skagit County Jail, and ICE issued a warrant of arrest. A Department of Homeland Security Investigations ("HSI") Special Agent observed the subject leaving the Skagit County Courthouse on September 12, 2018, and ICE Officers conducted a vehicle stop nearby. He admitted to being in the United States illegally. He was placed in removal proceedings before an Immigration Judge, granted bond and released from ICE custody. His case remains pending before the Immigration Court. *See* Exhibit C.

16. The Godoy Declaration alleges an individual was arrested outside the Seattle Municipal Court on December 31, 2018. Dkt. No. 23, pg. 3. ICE believes this allegation pertains to the alien identified in the I-213 marked as Exhibit D, a citizen of Honduras, who had been previously removed from the United States six times. He previously entered the United States without inspection at or near Brownsville, TX on or about April 30, 2002, and was granted voluntary return. Mexican Agents returned him after determining he was not a Mexican national as he had claimed. He was ordered removed by an Immigration Judge on July 17, 2002,[9] and removed on August 16, 2002. He was encountered by Border Patrol in CA on March 29, 2003. His removal order was reinstated and he was removed on April 23, 2003. He was encountered by ICE in OR on April 1, 2005, ordered removed by an

---

[8] Kitsap County Jail and the Kitsap County Superior Court are both located at 614 Division Street, Port Orchard, Washington.

[9] The I-213 states 2018, but it is clear the Immigration Judge's removal order was issued July 17, 2002, before his August 16, 2002 removal.

DECLARATION OF NATHALIE ASHER- 5
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Immigration Judge on April 15, 2005, and removed on June 15, 2005. He was next encountered by ICE in CA on March 30, 2006, ordered removed by an Immigration Judge on April 26, 2006, and removed on June 28, 2006. He was encountered again by Border Patrol in AZ on February 11, 2009, at which time he ran and then threatened to kill a Border Patrol Agent with a rock. He was referred for prosecution and convicted on June 4, 2009 in the United States District Court for the District of Arizona of felony Assault on a Federal Officer in violation of 18 U.S.C. § 111(a),(b) and sentenced to ten months imprisonment (case 4:09-00367-RCC-DTF). He was removed on January 14, 2010. He was encountered by Border Patrol again in AZ on April 27, 2013, and was prosecuted for and convicted of Illegal Re-Entry in violation of 8 U.S.C. § 1326 on May 13, 2014. He was sentenced to 21 months imprisonment and then removed on April 27, 2015. On December 2, 2018, the subject was booked and released from King County Jail for Theft. King County did not notify ICE prior to his release. Police records further indicated that the subject was homeless. Therefore, ICE Officers went to the Seattle Municipal Courthouse on December 31, 2018 with a warrant for his arrest. Officers observed him exit the courthouse and cross the street walking away from the court. After ICE Officers identified themselves and informed him of the warrant, he ran. He continued to actively resist arrest after he was caught. He admitted to being in the United States illegally. His prior order of removal was reinstated and he was transferred to the custody of the U.S. Marshals to await prosecution. On May 21, 2019, he was convicted in the United States District Court for the Western District of Washington of Illegal Reentry in violation of 8 U.S.C. § 1326 and sentenced to 13 months imprisonment (case 2:19-cr-00017-JLR). He was returned to ICE custody on December 23, 2019 and removed from the United States on January 15, 2020. *See* Exhibit D.

17. The Restrepo Declaration alleges that ICE Officers were at the Ephrata, Grant County Courthouse in August 2019. Dkt. No. 38, pg. 10. ICE has identified two apprehensions in August 2019 near the Grant County District Court to which this allegation may pertain: (1) The alien identified in the I-213 marked as Exhibit E, a citizen of Mexico, was first encountered by ICE in April 2015 while in jail in Ephrata, following an arrest for failure to appear, but he was released before ICE could detain him. While in the United States, he was convicted of: (1) Driving Under the Influence, Reckless Driving, Driving With a Suspended License, and Possession/Use of Drug Paraphernalia in July 2015, in Quincy; (2) Driving While License Suspended (three counts) in July 2015; (3) Interlock Violation and Driving While License Suspended in January 2016, in Quincy; (4) Possession of a Controlled Substance (methamphetamine) in August 2016, in Quincy. He was encountered by ICE again in July 2016, while in jail in Ephrata following an arrest for possession of methamphetamine and ICE lodged an immigration detainer. He was released directly into ICE custody on October 9, 2016. He was ordered removed by an Immigration Judge on December 14, 2016, and removed on January 3, 2017. He was next encountered by ICE on May 24, 2018, while in Grant County Jail serving a sentence for a DUI conviction. He was released to ICE custody, processed as a reinstatement, and transferred to the custody of the U.S. Marshals for

DECLARATION OF NATHALIE ASHER- 6
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

prosecution. On July 24, 2018, the United States District Court for the Eastern District of Washington dismissed the 1326 case against him. On July 27, 2018, the subject was released from the custody of the U.S. Marshals. He subsequently failed to report to ICE as ordered and became an immigration fugitive. On August 12, 2019, ICE Officers with a signed arrest warrant encountered him near the Grant County Assessors' Office.[10] He ran from the arresting officers, who subsequently detained him in the building. He admitted to being in the United States illegally. He was removed from the United States on the reinstated order of removal on August 27, 2019. (2) The alien identified in the I-213 marked as Exhibit F, a citizen of Mexico, had a prior voluntary return and a prior voluntary departure in September 2007. He was encountered by ICE on July 18, 2014, while in jail in Ephrata following an arrest for Driving Under the Influence and Hit and Run. An immigration detainer was lodged and he was released to ICE custody, where he was placed in removal proceedings. He was granted bond by an Immigration Judge and released from ICE custody on August 5, 2014. On March 15, 2015, an Immigration Judge in Seattle ordered him removed. The Board of Immigration Appeals dismissed his appeal on November 10, 2016. His petition for review was denied by the United States Court of Appeals for the Ninth Circuit on April 18, 2018. He was released from Grant County Jail on August 23, 2019, after posting bail on a pending Driving Under the Influence charge, and was encountered by ICE Officers near the County Commissioner's Office, where he was taken into custody in order to effect his final order of removal. He was removed from the United States on September 3, 2019. On October 20, 2019, he was encountered by Border Patrol at the Calexico West Port of Entry after attempting to reenter the United States using lost or stolen entry documents belonging to someone else. He was referred for prosecution and subsequently convicted on November 21, 2019, in the United States District Court for the Southern District of California for the offense of Fraud and Misuse of Visas, Permits and Other Entry Documents in violation of 18 U.S.C. § 1546 and sentenced to time served (case 3:19-cr-04592-GPC). He was transferred to ICE custody on January 13, 2020, and removed from the United States on January 14, 2020. *See* Exhibits E & F.

18. The Complaint alleges that ICE officers were at the Auburn Justice Center in October 2017. Dkt. No. 1, pg. 15, ¶ 54. ICE believes this allegation pertains to the alien identified in the I-213 marked as Exhibit G, a citizen of Kazakhstan, who entered the United States on June 7, 2012 as a J-1 nonimmigrant. He failed to maintain status after his entry. ICE initially encountered the subject at his residence in Ohio on January 15, 2013, at which time he admitted unauthorized employment. He was placed in removal proceedings, failed to appear at his initial hearing before an Immigration Judge in Cleveland, and was ordered removed in absentia on December 16, 2015. Efforts to locate the subject in Ohio were unsuccessful and he became an immigration fugitive. In March 2016, he was arrested in King County for Driving Under the Influence and his case was transferred to ERO Seattle for location and apprehension. On July 22, 2017, he was arrested in King County for

---

[10] The Grant County Assessor's Office, Grant County Commissioner's Office, Grant County Jail and the Grant County District Court are all located at 35 C Street NW, Ephrata, Washington.

DECLARATION OF NATHALIE ASHER- 7
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Negligent Driving in the Second Degree, No Valid Operator's License and Operating a Motor Vehicle Without Insurance. The subject was encountered by ICE Officers on October 23, 2017, after exiting the Auburn Justice Center and walking to a parking lot down the street. He was notified that there was an immigration warrant for his arrest and taken into ICE custody in order to effect his removal from the United States. On December 4, 2017, he was removed from the United States. *See* Exhibit G.

19. The numbers and examples above attests that ICE's practice regarding arrests "at or near" a courthouse generally conforms with the policy statements at issue in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 22nd day of January, 2020, at Seattle, Washington.

Nathalie Asher
Field Office Director, Seattle Field Office
U.S. Immigration and Customs Enforcement
Enforcement and Removal Operations

DECLARATION OF NATHALIE ASHER- 8
(C19-2043-TSZ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970