The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:19-cv-02043-TSZ |
| Plaintiff, | |
| v. | STATE OF WASHINGTON'S RESPONSE TO DEFENDANTS' MOTION TO STAY |
| U.S. DEPARTMENT OF HOMELAND SECURITY et al., | NOTE ON MOTION CALENDAR: February 12, 2021 |
| Defendants. | |

RESPONSE TO DEFENDANTS'
MOTION TO STAY--
NO. 2:19-cv-02043-TSZ

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## I. INTRODUCTION

Washington does not oppose a 120-day stay in order to give the new presidential administration time to set its immigration enforcement priorities and evaluate this particular litigation. But Washington opposes a stay with no strings attached. In county and municipal courts across the state, judges, court staff, and residents are hard at work resuming postponed criminal and civil jury trials and attending to everyday matters like landlord-tenant relations, family law, small claims, and countless other matters that have been on hold. The last thing Washington's courts need during this fragile period is the resumption of alarming courthouse arrests by immigration agents in plain clothes and unmarked vehicles. Any stay, therefore, should be conditioned on an order that Defendants refrain from civil immigration arrests at or near Washington courthouses while the stay is pending. At minimum, Defendants should be ordered to file a report on the docket within twenty-four hours of conducting a courthouse arrest, so the parties and the Court can determine whether to lift the stay.

## II. RELEVANT PROCEDURAL HISTORY

Washington filed its Complaint on December 17, 2019, and a motion for preliminary injunction the following day. ECF Nos. 1, 6. The Court set oral argument on the preliminary injunction motion for March 17, 2020. ECF No. 114 at 2. Then the COVID-19 pandemic struck, closing courthouses in the Western District of Washington as well as in counties and cities statewide. *See* ECF No. 125 (citing General Order No. 01-20); Amended Order No. 25700-B-607, *In re Statewide Response by Wash. State Cts. to the COVID-19 Pub. Health Emergency* (Wash. Mar. 20, 2020), http://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Supreme%20Court%20Emergency%20Order%20re%20CV19%20031820.pdf. As a result, the Court struck Washington's preliminary injunction motion without prejudice to Washington refiling it once county and municipal courts resumed non-emergency in-person operations. ECF No. 135.

RESPONSE TO DEFENDANTS' MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Concurrent with Washington's preliminary injunction motion, Defendants moved to dismiss all of Washington's claims. ECF No. 118. On April 10, 2020, the Court denied the motion to dismiss in its entirety and issued a scheduling order directing the close of discovery on February 16, 2021. ECF Nos. 129, 138. The parties proceeded with discovery; both sides issued and responded to written discovery, Washington took the depositions of three officials with the U.S. Customs and Border Protection (CBP), scheduled the depositions of four officials with U.S. Immigration and Customs Enforcement (ICE), and noticed a Rule 30(b)(6) deposition of the U.S. Department of Homeland Security. Declaration of Colleen M. Melody in Support of Washington's Response to Defendants' Motion to Stay (Melody Decl.) ¶¶ 3–11, 13–15.

In the meantime, Defendants' practices regarding at-large immigration apprehensions were also affected by COVID-19. On March 18, 2020, ICE announced that it would "temporarily adjust its enforcement posture" to "focus enforcement on public safety risks and individuals subject to mandatory detention based on criminal grounds." *See* U.S. Immigr. & Customs Enf't, *Updated ICE statement on COVID-19* (Mar. 18, 2020), https://www.ice.gov/news/releases/updated-ice-statement-covid-19 (last visited Feb. 4, 2021); *accord* U.S. Immigr. & Customs Enf't, *U.S. Immigration and Customs Enforcement Fiscal Year 2020 Enforcement and Removal Operations Report* at 3 (Dec. 23, 2020), https://www.ice.gov/doclib/news/library/reports/annual-report/eroReportFY2020.pdf (same). ICE's statement did not specifically address courthouses, but justice-system participants in Washington reported that DHS's courthouse activities dropped off in March 2020. Melody Decl. ¶ 12. And although CBP issued no similar public statement, a CBP Supervisory Border Patrol Agent testified at his October 2020 deposition that "we've had a stand-down since right around March" on courthouse arrests due to "Coronavirus." Melody Decl. ¶ 10, Ex. A (Watts Dep. 183:15–184:5).

By July 2020, however, Defendants lifted their COVID-related enforcement guidelines and publicly returned to a posture of unrestricted enforcement. *See, e.g.*, U.S. Immigr. & Customs Enf't , *ICE announces results of latest operations targeting criminal aliens* (Sept. 1,

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

2020), https://www.ice.gov/news/releases/ice-announces-results-latest-operations-targeting-criminal-aliens (last visited Feb. 4, 2021) (citing "more than 2,000 at-large" arrests from July 13, 2020, to August 20, 2020, including—contrary to the title of the press release—hundreds of arrestees with no criminal history). Defendants also resumed messaging their efforts to punish so-called "sanctuary jurisdictions," which Defendants accuse of insufficiently contributing local resources to "cooperat[e]" with federal immigration enforcement. U.S. Immigr. & Customs Enf't, *DHS, ICE announce arrests of more than 170 at-large aliens in sanctuary jurisdictions* (Oct. 16, 2020), https://www.ice.gov/news/releases/ice-announces-results-latest-operations-targeting-criminal-aliens (last visited Feb. 4, 2021) (citing Seattle as one of the targeted jurisdictions). And by December 2020, ICE resumed publicizing its efforts to arrest and deport individuals based on immigration status alone, without any requirement of criminal history. *See* U.S. Immigr. & Customs Enf't, *ICE announces the latest results of Operation Broken Promise, targeting aliens who failed to depart the US voluntarily* (Dec. 21, 2020), https://www.ice.gov/news/releases/ice-announces-latest-results-operation-broken-promise-targeting-aliens-who-failed (last visited Feb. 4, 2021).

In light of Defendants' return to policies of unrestricted immigration enforcement focused on jurisdictions Defendants dislike, Washington sought to use the remaining discovery period to clarify the current status of courthouse arrests in the state. Washington issued written discovery requests asking for records reflecting courthouse arrests during the pandemic. Melody Decl. ¶ 13, Exs. B, C. Washington noticed a Rule 30(b)(6) deposition of the Department of Homeland Security that sought testimony on, among other topics, "Modification(s) to the authorization for, or operation of, civil immigration arrests at state and local courthouses at any time since March 2020, including the specific modifications, bases therefore, and expected duration of each such modification." Melody Decl. ¶ 14, Ex. D. Finally, Washington scheduled the depositions of four ICE officials who have conducted and/or supervised courthouse arrests across the state. Melody Decl. ¶ 15, Ex. E. The parties agreed on January 26–29, 2021, for those

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

depositions. *Id*. Washington intended to ask whether courthouse arrests have resumed, and at what rate and location(s), since March 2020. *Id*.

Ultimately, Washington was unable to obtain from Defendants any information about current practices. On the Friday afternoon before the ICE depositions were set to take place, counsel for Defendants cancelled them, citing the change in presidential administrations. Melody Decl. ¶ 16. Defendants have not responded to the pending written discovery, and have indicated that they are not planning to schedule the Rule 30(b)(b) deposition. Melody Decl. ¶ 17. As a result, Washington has not been able to determine whether Defendants have conducted (or resumed) courthouse arrests since March 2020, and, if so, the circumstances surrounding any such arrests. Melody Decl. ¶ 15.

On January 25, 2021, the parties conferred regarding the 120-day stay Defendants now seek. Melody Decl. ¶ 18. Washington indicated that it would consider stipulating to a stay, provided that Defendants agreed to refrain from courthouse arrests while the stay was in place. *Id*. Defendants declined. *Id*. In their motion, Defendants include no representations about their current enforcement practices at Washington courthouses, and no assurances that they will refrain from such arrests during the term of the stay they seek. *See* ECF No. 142.

### III.     ARGUMENT

**A.     The Court Has Discretion to Tailor a Stay in the Public Interest**

A stay is "an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal punctuation and citations omitted). Before granting a stay, the Court should weigh the "competing interests which will be affected by the granting or refusal to grant a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Ninth Circuit sets out three factors for courts to consider: (1) the hardship or inequity that a party may suffer in being required to go forward, (2) the possible damage that may result from granting a stay, and (3) "the orderly course of

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*.

In a case where "there is even a fair possibility that the stay . . . will work damage to someone else," the moving party must demonstrate "a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255–57 (1936) (reversing stay as abuse of discretion where moving party had not made this showing). "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F. 3d 1098, 1112 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255). Instead, the party seeking a stay must point to evidence "in the record" "establishing [the stay's] need." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

Even in circumstances where a stay may be appropriate, the terms of the stay must comport with the public interest. *Landis*, 299 U.S. at 256. In tailoring stays so that "the public welfare or convenience will . . . be promoted," district courts may condition stays on "reasonable limits," "terms," and "conditions." *Id.* at 256–57; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) (remanding for district court "to consider conditioning any stay upon receipt of satisfactory assurances"); *Lockyer*, 398 F.3d at 1111 (reciting rule that stays may be "appropriately conditioned"); *Heckman v. Washington*, No. C04-5447, 2005 WL 1287888, at *3 (W.D. Wash. May 13, 2005) (granting stay "subject to the conditions set forth above"); *Ruyan Invs. (Holdings) Inc. v. Sottera, Inc.*, No. CV 12-5454-GAF, 2013 WL 12131546, at *1 (C.D. Cal. Feb. 25, 2013) (granting stay "subject to conditions proposed by [the non-moving party]").

**B.  The Court Should Condition Any Stay on an Order Prohibiting Courthouse Arrests**

It goes without saying that Washington courts, like courts nationwide, have faced "historic challenges" in administering justice during the COVID pandemic. Wash. Cts., *Message from Chief Justice Steven C. González*, Youtube (Jan. 11, 2011), https://www.youtube.com/watch?v=P00mP_VxaA0&feature=youtu.be. Courts across the state

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

are engaged in the high-wire act of balancing the rights of litigants, public health protocols, revised operations procedures, and a host of new, remote technologies. It is hard to imagine a time when the courts' mission to deliver "fair and accessible justice for everyone in Washington" has been more important or more complicated. *Id.*

Now, Washington courthouses have re-opened for in-person business, including not only "trials and other hearings, but also clerk's office operations, facilities planning, technology improvements, and the general administration of justice." Fourth Revised and Extended Order Regarding Court Operations, No. 25700-B-646, *In re Statewide Response by Wash. State Cts. to the COVID-19 Pub. Health Emergency*, at 3 (Wash. Oct. 13, 2020), http://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Extended%20and%20Revised%20Supreme%20Court%20Order%20October%202020.pdf. To be sure, court officials continue to implement strict public safety measures, including proceeding by remote means when possible, but in-person proceedings have resumed statewide. *Id.* at 3–4, 6, 10 (authorizing in-person appearances for criminal and civil jury trials, bench trials, non-emergency civil matters, juvenile offender matters, detention review hearings, and civil protection and restraining orders). It is imperative that litigants, witnesses, jurors, and individuals with civic business within the courthouse once again feel safe accessing these spaces.

The resumption of civil courthouse arrests, just as state courts begin to dig out from COVID-related shutdowns and backlogs, would be devastating. Courts are in the delicate position of needing to rebuild their roles as the physical centers of their communities. Defendants' argument that "little damage" will result from an unconditional stay assumes one of two things: (1) Defendants will not resume courthouse arrests, or (2) the resumption of courthouse arrests would not be damaging. The latter is contrary to common sense and the volume of evidence Washington submitted prior to the pandemic. *See* ECF Nos. 7–47. And the former can be guaranteed only if the Court so orders. Accordingly, the Court should condition

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  any stay on an order prohibiting Defendants from conducting civil immigration arrests at or near Washington state, county, and local courthouses during the pendency of the stay.

Defendants may object that their law enforcement mission requires unrestricted civil arrest authority. Any such argument should be rejected, given Washington's strong claims that civil courthouse arrests are unlawful in the first place, *see* ECF Nos. 6, 129, and the fact that Defendants voluntarily ceased the practice for some time during the pandemic, demonstrating that they are not a core enforcement activity. *See* U.S. Immigr. & Customs Enf't, *Updated ICE statement on COVID-19*; Melody Decl. ¶ 10, Ex. A (Watts Dep. 183:15–184:5). Simply put, Defendants' motion presents no "clear case of hardship or inequity" if courthouse arrests are restricted for the additional period of the stay they seek. *See Landis*, 299 U.S. at 255.

Alternatively, and at minimum, Defendants should be ordered to file a report with the Court within twenty-four hours of conducting a civil arrest at any Washington courthouse. Such report should contain full details about the date, location, and circumstances of the arrest, including the identity of the individual arrested and a copy of any resulting immigration charging document. Such a report would permit the Court and Washington to evaluate whether immediate action is required to lift the stay. *See Cheyney State Coll. Fac. v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983) (holding that stay was appropriately conditioned on "oversight" and "report[ing]" requirement).

### IV.   CONCLUSION

For the foregoing reasons, the Court should condition any stay in this matter on an order prohibiting Defendants from conducting civil courthouse arrests. At minimum, Defendants should be ordered to make a full report to the Court of any such arrest within twenty-four hours of its occurrence.

RESPONSE TO DEFENDANTS'  
MOTION TO STAY --  
NO. 2:19-cv-02043-TSZ

7

ATTORNEY GENERAL OF WASHINGTON  
Civil Rights Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA  98104  
(206) 464-7744

DATED this 8th day of February 2021.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General

*s/ Colleen M. Melody*
COLLEEN M. MELODY, WSBA #42275
Civil Rights Division Chief
MARSHA CHIEN, WSBA #47020
MITCHELL A. RIESE, WSBA #11947
Assistant Attorneys General
Attorneys for Plaintiff State of Washington
Wing Luke Civil Rights Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Phone: (206) 464-7744
Colleen.Melody@atg.wa.gov
Marsha.Chien@atg.wa.gov
Mitchell.Riese@atg.wa.gov

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 8th day of February 2021.

_____
CAITILIN HALL
Legal Assistant

RESPONSE TO DEFENDANTS'
MOTION TO STAY --
NO. 2:19-cv-02043-TSZ

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744